**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES ex rel. LANCE VANORSBY, | ) ) ) | **No. 11 C 7384** |
| Petitioner, | ) ) | |
| v. | ) ) | **Judge John J. Tharp** |
| GERARDO ACEVEDO, Acting Warden, Illinois River Correctional Center, | ) ) ) ) ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Petitioner Lance Vanorsby's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d).  For the following reasons, the Court denies Ward's habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. §2253(c)(2).

**BACKGROUND**[1]

Vanorsby was charged with two counts of armed robbery and two counts of unlawful restraint.  These charges stemmed from the robbery of two young women in Chicago on June 23, 2003.  At Vanorsby's trial in 2007, evidence showed that on the night of June 23, 2003, the two victims were walking down an alley between Troy and

---

[1] Vanorsby does not present clear and convincing evidence challenging the statement of facts in the last state court decision to address his arguments on the merits, which is the Illinois Appellate Court's opinion on direct appeal, and thus the Court presumes those facts are correct for purposes of its habeas review.  *See* 28 U.S.C. § 2254(e)(1); *McCarthy v. Pollard*, 656 F.3d 478, 483 (7th Cir. 2011).  The Court therefore adopts the underlying facts as set forth by the Illinois Appellate Court in *People v. Vanorsby*, No. 1-07-2488, (Ill. App. Ct. Dec. 6, 2010), attached to the petition as Doc. 1-5, pp. 10-16.

Kedzie Avenues on their way to meet friends when they were approached by two men. The men pointed their guns at the victims and demanded their purses. After sorting through the purses and discarding unwanted items, the men left the scene. The victims subsequently flagged down a police car and both victims provided descriptions of the offenders to the police. One of the victims later identified Vanorsby in a lineup on July 14, 2003, and also identified Vanorsby during the trial. The jury convicted Vanorsby of two counts of armed robbery and the trial judge sentenced him to 18 years' imprisonment.[2]

Prior to his criminal trial, Vanorsby moved to quash his arrest and suppress evidence that he had been identified in a police lineup by one of the robbery victims. At an evidentiary hearing on his motion, Vanorsby testified that on July 14, 2003, he was in the Cook County jail after being arrested on charges stemming from an unrelated armed robbery that took place in Dolton, Illinois. On that date, he was taken from the jail by Chicago Police Detectives Jasica and Dwyer to the Area 2 Chicago police station ("Area 2"). The detectives did not serve Vanorsby with a warrant or any document authorizing his removal from the county jail. Vanorsby testified that he advised the detectives that he was represented by counsel.

---

[2] After he filed his habeas petition in this Court, Vanorsby was granted mandatory supervised release from the Illinois Department of Corrections as of March 9, 2012. Doc. 19. To succeed on a habeas petition under § 2254, the petitioner "must demonstrate that he 'is in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters*, 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). The law is clear, however, that a petitioner who is out of prison on mandatory supervised release is still "in custody" for habeas purposes, and the mandatory supervised release does not moot his habeas claim. *Reimnitz v. State's Attorney of Cook County*, 761 F.2d 405, 408 (7th Cir. 1985); *Harper v. Montgomery*, 690 F.Supp.2d 708, 709 n. 2 (N.D. Ill. 2010) ("Despite the fact that [petitioner] has been released from prison, he remains 'in custody' for purposes of habeas jurisdiction because he is subject to mandatory supervised release.") (citing *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)).

At Area 2, Vanorsby continued, the detectives directed him to change into his own clothes and placed him in a lineup. They did not provide *Miranda* warnings and did not advise Vanorsby that he had a right to counsel. After the lineup, the detectives told Vanorsby that he had been identified, but not by whom or for what offense.

At the same evidentiary hearing, Detective Jasica testified that in the course of investigating the June 23, 2003, armed robbery, a detective from the Dolton police department contacted him and informed him that he was investigating a series of armed robberies occurring in the suburbs. The Dolton detective passed on some descriptive information about Vanorsby and inquired if the Chicago detectives had any similar cases. Based upon the information from the Dolton detective, Jasica contacted the SORT team at the Cook County jail about obtaining temporary custody of Vanorsby. Jasica faxed a temporary custody order regarding the transfer to the SORT team. On July 14, 2003, Detective Jasica along with Chicago Police Detective Dwyer took Vanorsby from the Cook County jail to Area 2. The detectives had no documents for the release of the defendant from the jail. Jasica acknowledged that Vanorsby was not given *Miranda* warnings or advised of his right to counsel prior to placing him in the lineup, but he denied knowing that the defendant was represented by counsel. One of the victims of the June 23, 2003, armed robbery, he testified, identified Vanorsby in the lineup.

In his motion to suppress the lineup identification, Vanorsby argued that the Chicago detectives had unlawfully seized him from the Cook County jail in violation of his Fourth Amendment rights. The trial court denied the motion to suppress, finding that the defendant had been continually in custody from the time of his initial incarceration in

the Cook County jail. The court further found that the defendant was not in custody on charges related to the June 23 robbery until after the lineup had been conducted.

Vanorsby appealed his conviction to the Illinois Appellate Court, First District, arguing that he was illegally seized and/or arrested without probable cause when he was taken from the Cook County jail on July 14, 2003. As his "arrest" was allegedly illegal, Vanorsby maintained that the fruits of that illegal arrest—the lineup identification and in-court identification—should have been suppressed. The Illinois Appellate Court rejected Vanorsby's arguments and affirmed his conviction in an opinion entered on December 6, 2010. Doc. 1-5 pp. 10-16. Vanorsby then filed a petition for rehearing, which the Illinois Appellate Court denied. Vanorsby next filed a petition for leave to appeal in the Supreme Court of Illinois arguing that the Illinois Appellate Court did not address his probable cause arguments under the Fourth Amendment. The Supreme Court of Illinois denied Vanorsby's petition on March 30, 2011. *People v. Vanorsby*, No. 111880, 949 N.E.2d 664 (Ill. 2011).[3]

On October 18, 2011, Vanorsby filed his pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). Vanorsby's petition lists four separate grounds for relief, but in reality he has only two distinct claims: (1) he was unlawfully seized in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution immediately prior to the police lineup, and (2) perjured testimony from detectives Dwyer and Jasica

---

[3] Vanorsby did not file a petition for a writ of certiorari to the United States Supreme Court. He likewise did not file a post-conviction petition, and the time for him to do so has expired. 725 ILCS 5/122-1(c) (no post-conviction petition "shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence"). Accordingly, as the State acknowledges, he has exhausted his state court remedies. Doc. 17 ¶ 23; *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

was presented to the grand jury and the court purportedly in violation of the Fourth and Fourteenth Amendments.[4]

## DISCUSSION

### I.    Vanorsby's Unreasonable Seizure Claims

In his habeas petition, Vanorsby renews his argument that the Chicago police violated his Fourth Amendment right to be free from unreasonable searches and seizures when they seized him from the Cook County jail, where he was being held on unrelated charges.  He argues that at the time of his seizure, the police did not have probable cause to arrest him for the June 23, 2003, robbery.  Therefore, he argues, the evidence obtained from his seizure—the victim's identification of him as the perpetrator during the lineup and her subsequent in-court identification of him—should have been excluded because it was obtained through his illegal seizure.  Vanorsby further argues that at the time of his

---

[4] In view of Vanorsby's testimony at the suppression hearing that he advised the Chicago detectives that he was represented by counsel when they transported him to Area 2, and cognizant that "pleadings prepared by prisoners who do not have access to counsel [must] be liberally construed," *McNeil v. United States,* 508 U.S. 106, 113 (1993), the Court has considered whether Vanorsby has asserted a Sixth Amendment right-to-counsel claim based on lack of counsel at the lineup.  It does not appear that he has, or could have, asserted such a claim.  Vanorsby's petition does not mention the Sixth Amendment at all, and although he testified at his suppression hearing that he told the detectives that he was represented by counsel when they transported him to Area 2, his petition concedes that he was in custody on "unrelated charges," so he has no basis to argue that the lineup should not have been conducted in the absence of the attorney who was representing him on those "unrelated charges."  Moreover, "the right to counsel attaches 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment.'"  *United States v. Larkin*, 978 F.2d 964, 969 (7th Cir. 1992) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). Here, because adversarial judicial proceedings had not been initiated in the Chicago robbery at the time the lineup, Vanorsby would not have had the right for counsel to be present at the lineup.  *Id.*  Accordingly, the Court concludes that any Sixth Amendment claim that Vanorsby may have intended to present in his petition is both procedurally defaulted and substantively meritless.

seizure, the police did not have probable cause to arrest him for the June 23, 2003 robbery.

The State argues that *Stone v. Powell*, 428 U.S. 465 (1976), bars this Court from hearing Vanorsby's Fourth Amendment claims. *Stone* holds that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 482; *see also Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005) (on habeas petitions, federal courts "may not enforce the exclusionary rule unless the state judiciary denied the defendant a full and fair opportunity to contest the search or seizure").

A habeas petitioner receives "a full and fair opportunity to litigate" in the state court so long as "(1) he clearly apprised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts." *Miranda v. Leibach*, 394 F.3d 984, 998 (7th Cir. 2005). Though the first two prongs of the test appear to have been satisfied in the state court, the state court did not apply the proper constitutional case law, so Vanorsby did not have a "full and fair opportunity" to litigate his Fourth Amendment claim in state court, and *Stone* does not apply.

The third factor of the *Stone* test requires only that the state court "look to the appropriate body of decisional law," not that it apply that law correctly. *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002). But here, we are presented with the inverse

situation:  the appellate court's ruling—that the transfer of custody from Cook County to Chicago did not violate the Fourth Amendment—was (as will be seen) correct, but in reaching that result the court plainly failed to look to the appropriate body of Fourth Amendment case law, much less apply that case law to Vanorsby's case.  The State cites at least eight cases that it says (correctly) stand for the proposition that "[o]nce a person is lawfully in police custody, he 'may be placed in a lineup for unrelated crimes of which he is a suspect, and such a procedure is consistent with due process as long as the lineup itself does not violate due process.'"  Doc. 17 at 16-17.  But the Illinois Appellate Court cited *none* of those cases—or any other Fourth Amendment unreasonable "seizure" cases—in finding that Vanorsby's Fourth Amendment rights were not violated.  In fact, the court cited to only a single substantive case in its entire opinion:  *People v. Hunt*, 234 Ill.2d 49, 914 N.E.2d 477 (Ill. 2009).

As Vanorsby correctly argues, the *Hunt* opinion does not address his probable cause argument even though the facts of *Hunt* share many similarities with the instant case.  In *Hunt*, the defendant was a pretrial detainee at the Cook County jail when law enforcement officials began investigating him as the potential culprit in an unrelated murder.  *Id.* at 53, 914 N.E.2d at 479.  During the course of the murder investigation, Chicago police officers twice signed the defendant out of the county jail, transported him to a Chicago police station, and put him in an interview room with an informant for the purpose of conducting court-ordered consensual "overhears."  *Id.*  The defendant's conversations with the informant were recorded, and the defendant allegedly implicated himself in the murder.  *Id.*  The intermediate appellate court suppressed the recordings of the defendant's statements on the grounds that the transfer violated the County Jail Act,

730 ILCS 125/1 *et seq.*, finding that the Act required a court order to transfer the defendant from the Cook County jail to the Chicago police. *Id.* at 61, 914 N.E.2d at 483. Because the Chicago police had no such order, the appellate court found, the transfer was illegal, and the defendant's statements were therefore suppressed as the result of an illegal search or seizure. *Id.*

The Illinois Supreme Court reversed, rejecting the appellate court's interpretation of the County Jail Act. *Id.* at 60-61, 914 N.E.2d at 483. The court found that the Act did not require a judicial order to release a prisoner to law enforcement officials for the purposes of a criminal investigation, and therefore that the transfer did not violate state law. *Id.* at 64, 914 N.E.2d at 485. The Illinois Supreme Court did not determine whether probable cause to believe that the defendant had committed the murder was required for the transfer, or whether probable cause existed under the facts at issue.[5] In fact, the court explicitly stated that "it is not necessary to address" the argument that "permitting law enforcement officials to seize jail inmates without probable cause" violates the Fourth Amendment because that constitutional issue had not been raised in, or explicitly considered by, the appellate court. *Id.* at 65, 914 N.E.2d at 485.

---

[5] The *Hunt* court likely had no reason to address the probable cause argument because the police in that case *did* have probable cause to arrest the defendant for murder. In *Hunt*, the police obtained two "court-ordered consensual overhears" prior to the defendant's transfer, establishing that they must have had probable cause. Under Illinois law, applications for a consensual overhear must be based on "reasonable cause" to believe that a crime has been committed. *See* 725 ILCS 5/108A-4; *see also People v. Calgaro*, 348 Ill. App. 3d 297, 301, 809 N.E.2d 758, 761 (Ill. App. Ct. 2004) ("'Reasonable cause' as used in the eavesdropping statute is synonymous with 'probable cause.'"). Because the Chicago police must have had probable cause to arrest the defendant for the murder, the *Hunt* court was not required to determine whether the defendant's transfer violated the Fourth Amendment for lack of probable cause.

*Hunt*, in other words, did not consider whether the prisoner transfer violated the Fourth Amendment, but rather only whether it violated state law. Evidently misapprehending the nature of Vanorsby's claim, the state appellate court relied solely on *Hunt* to resolve Vanorsby's suppression motion and plainly did not consider the appropriate body of decisional law relevant to an evaluation of his Fourth Amendment claim. Conflating the different standards for applying *Stone* and for denying a habeas petition on the merits, the State contends that *Stone* applies because the Illinois Appellate Court's "bottom-line judgment" was correct under the Fourth Amendment even if its reasoning was incorrect. Doc. 17 at 20. This reasoning is circular—if *Stone* applies, this Court need not even review the merits of Vanorsby's claims. *Hennon v. Cooper*, 109 F.3d 330 (7th Cir. 1997), on which the state relies, did not apply (or even cite) *Stone*. The *Hennon* court decided the petitioner's claims on their merits, having determined that the state court's evaluation of petitioner's claim was "at least minimally consistent with the facts and circumstances of the case." 109 F.3d at 335. That is a long way from holding that *Stone* precludes federal courts from examining a habeas petitioner's argument on its merits regardless of how the State came to its conclusion.[6] Because the state appellate court did not apply Fourth Amendment law to resolve Vanorsby's Fourth Amendment claim, the Court holds that Vanorsby did not have a "full and fair" opportunity to litigate his Fourth Amendment claim in the Illinois proceedings.

Accordingly, the Court addresses the merits of that Fourth Amendment claim. On that score, the Court agrees with the State: Vanorsby's transfer from the Cook County

---

[6] One of the three requirements for applying *Stone* is that the state court "applied the proper constitutional case law." *Miranda*, 394 F.3d at 997. The State does not provide any convincing rationale to explain how that requirement is satisfied by virtue of the state court issuing a "bottom-line judgment" consistent with Fourth Amendment principles.

jail to the custody of the Chicago police to permit them to conduct a lineup was in no way an "arrest" or a "seizure" giving rise to Fourth Amendment concerns. Vanorsby was already in custody for the Dolton robberies at the time of his transfer, and the reasonableness of his arrest for those crimes is not at issue before this Court. Prisoners can be required to participate in lineups for cases unrelated to those for which they are in lawful custody. *See, e.g., United States v. Anderson*, 490 F.2d 785, 788-89 (D.C. Cir. 1974) (prisoner "lawfully in custody" may be compelled to participate in lineup for unrelated crime without a finding of probable cause); *Rigney v. Hendrick*, 355 F.2d 710, 713 (3d Cir. 1965) (rejecting contention that prisoner must be re-arrested in order to be compelled to participate in lineup for unrelated crime); *Collins v. Scully*, 878 F. Supp. 452, 456 (E.D.N.Y. 1995) ("a person in lawful custody may be placed in a lineup for unrelated crimes of which he is a suspect, and such a procedure is consistent with due process as long as the lineup itself does not violate due process"); *People v. Nelson*, 40 Ill.2d 146, 152, 238 N.E.2d 378, 382 (Ill. 1968) (requiring prisoner to appear in lineup for unrelated case).

The "sole physical attribute of an arrest," moreover, "is the taking into custody." *Rigney*, 355 F.2d at 713. Once an individual has been lawfully taken into custody, he has been seized for purposes of the Fourth Amendment; merely transferring custody of that individual from one law enforcement agency to another deprives him of nothing he has not already lost.[7] Because Vanorsby was already in lawful custody on July 13, 2003, he

---

[7] The petition does not present, and accordingly the Court does not consider, the issue of whether a transfer of custody that is accompanied by materially greater restrictions on liberty could constitute a violation of Fourth Amendment or due process rights. *Cf. Toston v. Thurmer,* No. 11-3914, 2012 WL 3124915, *4 (7th Cir. Aug. 2, 2012) (remanding for consideration of whether a change in character rather than length of

was not "arrested" or "seized" for purposes of the Fourth Amendment when he was transferred to the custody of the Chicago police. *See, e.g.*, *Coleman v. Gillespie*, 424 Fed. Appx. 267, 270 (5th Cir. 2011) ("transfer of an arrestee from the custody of one officer to another does not effect a separate arrest or seizure"); *United States v. Laville*, 480 F.3d 187, 196 (3d Cir. 2007) (transfer of custody from local to federal officials was not a "new arrest" and therefore federal authorities were not required to have probable cause); *Brown v. Venango County*, No. 09-268, 2010 WL 5293906, *5 (W.D. Pa. Dec. 17, 2010) (transfer of federal prisoner to local custody did not constitute a Fourth Amendment seizure by local authorities because prisoner "had already been 'seized' for purposes of the Fourth Amendment"); *Goldhaber v. Higgins*, 576 F. Supp.2d 694, 717-18 (W.D. Pa. 2007) (rejecting claim that incarcerated inmate could be "seized" or that such "seizure" could ever violate the Fourth Amendment).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of, federal law clearly established by the Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011). As the Court is aware of no case law supporting Vanorsby's argument that probable cause is required to transfer custody of a prisoner for investigational purposes, Vanorsby plainly cannot meet the AEDPA standard and his petition for writ of habeas corpus on unreasonable seizure grounds must therefore be denied.

---

confinement constituted a deprivation of liberty beyond that inherent in the lawful confinement). Vanorsby makes no claim that he was subjected to materially greater restrictions of liberty while in the custody of the Chicago police.

**II.      Vanorsby's Perjury Claim**

In addition to his unlawful seizure claim, Vanorsby offers a frivolous argument that perjured testimony by Detectives Dwyer and Jasica was used to secure his indictment and the denial of his motion to quash and suppress the witness identification at the lineup.[8]  He fails to identify the allegedly perjured testimony, however, much less how it contributed to his conviction.  Beyond that fundamental deficiency, Vanorsby admits that he did not raise his perjury claim in state court, claiming that it was not presented due to "'newly discovered' evidence not being available at the time of previous litigation." Doc. 1 at 6.  He gives no indication what that new evidence is, however.  The transcripts of Detectives Dwyer's and Jasica's testimony before the grand jury and the court, respectively, is the only evidence attached to Vanorsby's petition that could implicate the detectives in perjury.[9]  Doc. 1-6; Doc. 1-8.  The transcripts, however, are not newly discovered, and do not establish—or even suggest—that either detective committed perjury.

Vanorsby does not show good cause for why he failed to present his perjury arguments in state court, nor does he show that the detectives supposed perjury prejudiced him by infecting his trial with error of constitutional dimension.  Therefore, because he failed to establish cause and prejudice as to why his perjury claim was not presented in state court, his perjury claim is procedurally defaulted. *See House v. Bell*,

---

[8] Vanorsby characterizes this as a Fourth Amendment claim as well, but a claim that a conviction was based on perjured testimony would be analyzed (if, unlike here, it were not procedurally defaulted and inadequately described) under the due process clause.  *See Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) ("A prosecutor's knowing use of false testimony violates the United States Constitution's due process clause.").

[9] Vanorsby's FOIA requests for the temporary custody form used for his transfer on July 14, 2003, and the responses he received, in no way indicate that either detective committed perjury.  Doc. 1-10.

547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). His petition for writ of habeas corpus on this ground is therefore denied.

### III.    Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Vanorsby a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition. Instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El*, 537 U.S. at 336; 28 U.S.C. § 2253(c)(2). Under this standard, Vanorsby must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Here, jurists of reason would not debate the Court's conclusion that Vanorsby's Fourth Amendment claim fails because he was not "unreasonably" seized when he was transferred into the custody of the Chicago detectives, and because he has not shown sufficient cause and prejudice for his procedural default of his perjury claim in state court. Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

\* \* \*

For all of these reasons, the Court denies Vanorsby's petition for a writ of habeas corpus and declines to certify any issues for appeal.   *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

Date: August 24, 2012

_____
John J. Tharp, Jr.
United States District Judge